**CHUDDE, etc. et, Appellants, v. BOARD OF LIQUOR CONTROL, etc., Appellee.**

Common Pleas Court, Franklin County.

No. 186178. Decided April 9, 1953.

Edwin M. Tuttle, Columbus, for appellants.
C. William O'Neill, Atty. Genl., Ralph N. Mahaffey, Asst. Atty. Genl., Columbus, for appellee.

## OPINION

By BARTLETT, J.

1. THE MOTION FOR AN ORDER GRANTING THE RIGHT TO ADMIT ADDITIONAL EVIDENCE, OTHER THAN THAT SHOWN BY THE RECORD AS CERTIFIED BY THE BOARD OF LIQUOR CONTROL, IS OVERRULED.

2. BOARD OF LIQUOR CONTROL ORDER (REJECTING APPLICATION FOR RENEWAL OF PERMITS, C-1, C-2, D-1, D-2, D-3 and D-3a), IS REVERSED.

This is an appeal under §154-73 GC, seeking reversal of the order of the Board of Liquor Control, affirming the order of the Director of the Department of Liquor Control, refusing to renew the permits, C-1, C-2, D-1, D-2, D-3 and D-3a of the applicant.

Sec. 154-73 GC, and a part of the Administrative Procedure Act, provides in part as follows:

"Unless otherwise provided by law, in the hearing of the appeal the Court shall be confined to the record as certified to it by the agency, provided, however, unless otherwise provided by law the Court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency."

There is no showing of a demand before the Board that the appellant be given further opportunity to meet the evidence offered before the Board that did not concern the original charges, and which counsel for appellant claims was an unfair surprise which appellant was not prepared to meet. Subsequent study of the record, convinces the Court that this case does not warrant the offering of any so-called newly discovered evidence.

The Court, accordingly, overrules the motion for the admission of additional evidence.

The grounds for rejection of the application for renewal of the permits in question were given at the opening of the hearing before the Board. (R. 2) They were in substance as follows:

"The Department finds that since the issuance of the last permit * * * this place of business has been conducted in a disorderly manner in that persons have been allowed to become drunk and disorderly on the permit premises in numerout instances * * * that in many such instances law enforcement officers have been called to the premises by persons other than the permit holder * * *." (Emphasis ours.)

"The Department further finds on the basis of affirmative evidence that issuance of the permits applied for would prejudice the maintenance of public decency, sobriety and good order. This finding is based upon the record of intoxications and disorders which have occurred on the premises * * *. The conduct of the permit premises * * * indicate that the permit holder has knowingly and wilfully allowed improper conduct, including brawls, and has permitted persons to become intoxicated on the premises and remain there * * *."

"The Department further finds * * * a false material statement in the application * * * 'township where located—Alpha.' The applicant's place of business last year was located in Beavercreek Township and not in Alpha Township."

The permit premises are known as Lone Pine Inn, State Route 35, Dayton—Xenia Pike, Xenia, Ohio. The current permits were issued in June, 1952. (Emphasis ours.)

Sheriff Hinkle testified (R.7) the only arrests for 1952 were

"8-13-52" * * * "They had three boys and two girls, throwing chairs and creating a disturbance on the premises." * * * "a fight" and the Sheriff's office was called "to quell a disturbance." Sheriff's "records indicate that there was only one call for an arrest in 1952; two in 1951; and eight in 1950." (R. 7.)

Sergeant Schneider of the Dayton Police Department testified he visited the permit premises "October 7, 1950." (R. 10) "in regard to stolen cigarettes." (R. 11.) "We went out sometime and recovered about 150 or 160 stolen cartons of cigarettes." (R. 12.)

Charles Edwards testified "about the middle of December, 1950" he visited the premises with Fred Stewart, and met "Curly" Bayne, the bartender (R. 13), "rented a cabin and stayed there two or three weeks." (R. 14); rented the cabin from Bayne at $10 per week, located on same grounds as the Lone Pine Inn. Edwards says he "was burglarizing homes at times."; * * *, "So 'Curly' said he would rent me the cabin so we could put the merchandise in that we took out of the homes * * *." (R. 15.) Edwards said he stored in this cabin a large T. V. set, radio, pop-up toasters, waffle irons; and that Curly Bayne purchased "two television sets" from him "inside the bar room." (R. 16.)

Edwards testified on cross-examination that he was convicted on these burglaries and served 18 months in the Ohio Penitentiary; and that Lowell Herzog and Charles Campbell were convicted of these same burglaries and were then serving time. (R. 16.)

Deputy Sheriff Davis testified he visited permit premises "March 1, 1951." "We went out and talked to Mr. Chudde in regards to his manager, Curly Bayne. We tried to recover some merchandise that was reported to us having been at the Lone Pine. When Curly arrived we talked to him, and he admitted that this merchandise had been there, and we did recover one article from the premises." (A portable radio, R. 18.) Mr. Chudde said he "had no knowledge of anything going on there;" and Curly Bayne "admitted that he had seen the merchandise there and he did have a portable radio in his possession * * * and a shot gun."

Julius Chudde testified they had an "acre and a half, a barroom, a house and 18 cabins." (R. 21-22.) The cabins were rented through the bar. They had a license to operate the cabins. (R. 23.) They employed about 12 people. Curly Bayne worked for the owners from 1950 when they acquired the place until July 1, 1952, when he resigned to run a grill of his own. (R. 23.)

. Nathan Chudde, one of the owners, testified: He didn't

"remember Edwards being out there," (R. 28); and that he purchased 200 cartons of cigarettes at $1.25 a carton (R. 29) from another tavern owner, (R. 30).

Sergeant Schneider stated that his investigation did not involve Nathan Chudde in any respect, other than the purchase of 200 cartons of cigarettes that had been shoplifted in Dayton. (R. 31.)

Amos Bayne ("Curly") testified: He was a bartender and manager of the Lone Pine Inn from June, 1950, to July 1, 1952. He rented the cabin to Charles Edwards for a week and he stayed three weeks. He gave him a radio for the last week's rent. (R. 33.) He bought a shot gun from Fred Stewart (R. 34) for $14. He returned the radio and shot gun to the officers. No charges were placed against him. (R. 35.) He said Julius Chudde; purchased a television from Edwards; he picked it up at the radio shop and returned it to the Sheriff (R. 40).

The radio put up for a week's rent was returned to the Sheriff about four or five days after he took it for the rent. (R. 41.)

Julius Chudde testified: He brought a television from Edwards; it was a used set about two years old and had a white blurry picture. (R. 41.) He paid $75 for it, and took it to his radio shop, tore it down for repairs and Bayne returned it to Sheriff Hinkle. (R. 42.)

The evidence produced before the Board failed in every respect to afford any support whatever to the charges on which the hearing was based. The current permits were issued in June, 1952; and the only arrests in 1952 involved a fight, August 13, 1952, when the three boys and two girls created a disturbance throwing chairs, and the Sheriff was called. There was no evidence that these rowdies even had a drink on the premises; and the evidence failed to show who called the Sheriff. The evidence discloses that only one arrest was made in 1952, two in 1951 and eight in 1950. (R. 8.) If anything, certainly the record had improved each year.

The evidence having failed to afford even slight proof of the original charges; thereupon, the hearing developed that in 1950 and 1951 some slick burglars rented a cabin from the bartender, and stored some of the loot there; the bartender took a portable radio as security for the last week's rent, brought a shot gun for $14; one of the owners bought a used television for $75, sent it to his radio shop and had it torn down for repairs. The portable radio, shot gun and two year old television were returned to the Sheriff. The other owner bought 200 cartons of cigarettes from another tavern owner at a low price, but the evidence did not show the condition of

the cigarettes. No criminal charges were ever placed against the bartender or either of the owners of the tavern. The permits were renewed twice, June, 1951, and 1952, since the episodes in which the burglars rented the cabin and the storing therein and sales of stolen property.

The Court is of the opinion and so finds that the order of the Board of Liquor Control is not supported by reliable, probative and substantial evidence, and is not in accordance with law; and, therefore, reverses the order of said Board and dismisses the appeal herein. The permits in question are ordered to be renewed.

Entry accordingly, with exceptions by counsel for the Board.